# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of:

Information associated with cellular telephone assigned
call number 414-810-9473, which is stored at premises
controlled by U.S. Cellular, a wireless telephone service
provider headquartered in Chicago, Illinois.

)
)
)
)
)
)

Case No. _20·MJ-87_

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
Title 21, United States Code, Section 841(a)(1) (distribution of and possession with intent to distribute controlled substances).
The application is based on these facts: See attached Affidavit.

☒ Delayed notice of __60_____ days (give exact ending date if more than 30 days: __May, 27, 2020_) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

_____Christopher P. Farrell, FBI Special Agent_____
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: ___2/27/2020_____

_____
*Judge's signature*

City and State: _Milwaukee, Wisconsin_____

_____William E. Duffin_____, U.S. Magistrate Judge
*Printed Name and Title*

<u>AFFIDAVIT IN SUPPORT OF</u>
<u>AN APPLICATION FOR A SEARCH WARRANT</u>

I, Christopher P. Farrell, being first duly sworn, hereby depose and state as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call numbers **(414) 810-9473** (the "**Target Cell Phone**"). The **Target Cell Phone** having subscriber JEFFREY JONES, and known to be used by JEFFREY R. JONES (date of birth: XX/XX/1984), whose service provider is U.S. Cellular, (the "Service Provider") a wireless telephone service provider headquartered in Chicago, Illinois. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing,

1

addressing, and signaling information associated with each communication to or from the **Target Cell Phone**.

3.      I am a Special Agent with the Federal Bureau Investigation, and have been since August of 2008.  I have been assigned to the Southeastern Wisconsin Regional Gang Task Force since September of 2019.  I was previously assigned to the Louisville and Pittsburgh Field Offices.  Prior to being employed with the FBI, I was a police officer for approximately six and a half years.  I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

4.      As a Special Agent, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of individuals and the seizure of illegal drugs, weapons, United States currency and other evidence of criminal activity.  As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances.  Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.  I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover operations, court-ordered wiretaps, analysis of phone and financial records, and the arrests of numerous drug traffickers.  I have also been the affiant of many search

2

warrants. Additionally, I have spoken with other experienced narcotics investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Furthermore, I have attended training courses which specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

5. The facts in this affidavit come my personal observations, my training and experience, my review of documents, and information obtained from other law enforcement agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 Untied States Code, Sections 841(a)(1) (distribution of and possession with the intent to distribute controlled substances) have been committed, are being committed, and will be committed by JEFFREY R. JONES (XX/XX/1984). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal

3

violations and will lead to the identification of other individuals who are engaged in the commission of these offenses.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. The United States, including the FBI and the FBI's Southeastern Wisconsin Regional Gang Task Force, are conducting a criminal investigation of JEFFREY R. JONES regarding possible violations of Title 21, United States Code, Section 841(a)(1) (distribution of and possession with intent to distribute controlled substances).

9. In January of 2020, case agents interviewed a confidential source (CS #1). CS #1 stated "RJ" is a Gangster Disciple gang member who is selling heroin and fentanyl. CS #1 indicated s/he had purchased narcotics from RJ in the past and would be able to purchase narcotics again from RJ. CS #1 indicated RJ drives a black Nissan Maxima with Illinois plates. CS #1 indicated RJ was currently in possession and known to use phone number **(414) 810-9473,** the **Target Cell Phone,** to facilitate illegal narcotics transactions. A case agent showed a single Milwaukee Police Department booking photograph of JEFFREY R. JONES (date of birth: XX/XX/1984) to CS #1. CS #1 positively identified the photograph as the person CS #1 knew as "RJ."

4

10.     Based upon my training and experience, I know that a "controlled buy" (and/or controlled contact) is a law enforcement operation in which a confidential source purchases drugs from a target.  The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When a confidential source is used, s/he is searched for contraband, weapons, and money before the operation. The confidential source is also wired with a concealed body recorder and monitoring device. When the transaction is completed, the confidential source meets cases agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The confidential source is again searched for contraband, weapons, and money.  A sample of the suspected drugs is then field tested by case agents for the presence of controlled substance and then placed in inventory pursuant to normal inventory procedures.  Telephone calls to the target by the confidential source are consensually recorded calls under the direction and control of case agents and made in the presence of case agents.

11.     Case agents believe CS #1 is reliable and credible.  First, CS #1 has provided information and cooperated with law enforcement since October 2019. Second, CS #1's information is consistent with case agents' knowledge of violent gang subjects in Milwaukee, Wisconsin.  Furthermore, substantial portions of CS #1's information has been corroborated in other gang investigations by controlled drug purchases, consensually recorded phone calls, as well as through independent investigation, including surveillance and information from other sources.  CS #1 is

5

cooperating with law enforcement to obtain consideration from the Milwaukee County District Attorney's Office for pending charges related to narcotics trafficking. CS #1 is a convicted felon with prior obstruction, carrying a concealed weapon, and possession and distribution of narcotics convictions. For these reasons, case agents believe CS #1 to be reliable.

12. On February 3, 2020, case agents interviewed CS #1. CS #1 stated s/he has purchased fentanyl from JONES since 2015. CS #1 has purchased a minimum of 10 grams of fentanyl at least 40 times since 2015. CS #1 advised s/he has purchased 70 grams of fentanyl between seven and eight times. Overall, CS #1 believed s/he purchased half a brick, or kilogram, of pure fentanyl from JONES since 2015. CS #1 advised JONES has been using the **Target Cell Phone** for the last three to four years.

13. On February 3, 2020, case agents utilized CS #1 to conduct a controlled purchased of heroin from JONES. CS #1 advised s/he was successful in setting up a heroin purchase of approximately 45 grams for $4,100 from JONES. CS #1 advised JONES was waiting for CS #1 to call him to meet and conduct the transaction. CS #1 made a consensually recorded phone call to the **Target Cell Phone** and JONES answered the phone. CS #1 and JONES discussed meeting, and JONES told CS #1 to meet him at the Popeye's restaurant located at 1567 W. National Avenue in Milwaukee, Wisconsin. Case agents established surveillance in the area and observed CS #1 park in the parking lot. Case agents observed JONES arrive in the parking lot driving a Nissan Maxima and park behind CS #1. CS #1 entered

6

JONES' vehicle from the front passenger side and then exited shortly thereafter. JONES was then observed exiting his vehicle, after which he approached CS #1 at his/her vehicle and engaged in what appeared to be a verbal confrontation. JONES then returned to his vehicle and left the parking lot.

14.     Case agents met and debriefed CS #1 after the narcotics purchase from JONES. Case agents seized the suspected heroin and the recording devices. CS #1 indicated s/he arrived in the parking lot and called JONES at the **Target Cell Phone** and notified him that CS #1 was waiting in the parking lot. CS #1 observed JONES arrive in the parking lot in the black Nissan Maxima and entered the front passenger seat. CS #1 provided JONES $4,100 in cash and JONES handed a clear plastic sandwich bag from the center cup holder containing a grey rock-like substance. CS #1 exited the vehicle and returned to his/her vehicle when JONES approached CS #1's drive side door. JONES was upset because he believed CS #1 owed him $300. JONES then returned to his vehicle and left the parking lot. CS #1 believed JONES was keeping narcotics at a nearby storage unit because JONES lives close to the meet location, but it took him a considerably longer time to arrive to the meet location.[1] JONES also told CS #1 he had to go out of town, which CS #1

---

[1] On February 21, 2020, CS #1 again debriefed with law enforcement and stated that he usually meets JONES at either the Popeye's or McDonald's parking lot, both of which are near Jones' house. However, according to CS #1, it usually takes JONES longer to arrive, and therefore he believes JONES travels to a storage location to obtain narcotics before delivering to CS #1.

7

believed meant that JONES needed to get more narcotics, most likely from Chicago or Detroit.

15. Case agents field tested the suspected heroin which yielded positive results for the presence of heroin and fentanyl and weighed approximately 44.22 grams. A case agent reviewed the video of the narcotics transaction and determined it was consistent with CS #1's statements regarding the narcotics transaction. A case agent also positively identified JONES as the individual who met CS #1 in the parking lot to conduct the narcotics transaction.

16. Case agents searched law enforcement databases to confirm that the **Target Cell Phone** is currently being serviced by U.S. Cellular.

17. On February 18, 2020, a case agent issued an administrative subpoena to U.S. Cellular for subscriber information for the **Target Cell Phone**. The Service Provider indicated the subscriber was JEFFREY JONES with an address in Milwaukee, Wisconsin. The Service Provider indicated the **Target Cell Phone** was activated on November 9, 2014.

18. Case agents are requesting this warrant authorizing the disclosure of data related to the **Target Cell Phone** for 30 days to further investigate JONES' activities, and to identify locations to which JONES is traveling to further his drug distribution.

19. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical

8

capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### Cell-Site Data

20.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal

Case 2:20-mj-00087-WED   Filed 02/27/20   Page 10 of 21   Document 1

course of business in order to use this information for various business-related purposes.

## E-911 Phase II / GPS Location Data

21.    I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available.

10

## Pen-Trap Data

22.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## Subscriber Information

23.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional

11

records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone's** user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

24.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

26.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

27.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the

12

warrant to delay notice until 60 days "after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

28. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

13

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned **(414) 810-9473** (referred to herein and in Attachment B as the "**Target Cell Phone**), with an unknown subscriber that is in the custody or control of U.S. Cellular (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 8410 W. Bryn Mawr Avenue, Chicago, Illinois 60631.

2. Prospective E-911/GPS Data latitude-longitude information for the **Target Cell Phone**.

1

## ATTACHMENT B

## Particular Things to be Seized

## I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.  The following subscriber and historical information about the customers or subscribers associated with the **Target Cell Phone** for the time period February 3, 2020 to the present:

   i.   Names (including subscriber names, user names, and screen names);

   ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

1

Identity Identifiers ("IMSI"), or International Mobile Equipment
Identities ("IMEI");

vii.  Other subscriber numbers or identities (including the
registration Internet Protocol ("IP") address); and

viii.  Means and source of payment for such service (including any
credit card or bank account number) and billing records; and

ix.  All records and other information (not including the contents of
communications) relating to wire and electronic communications
sent or received by the **Target Cell Phone** including:

(A) the date and time of the communication, the method of the
communication, and the source and destination of the
communication (such as the source and destination telephone
numbers (call detail records), email addresses, and IP
addresses); and

(ii) information regarding the cell tower and antenna face (also
known as "sectors" through which the communications were
sent and received)

b.  Information associated with each communication to and from the
**Target Cell Phone** for a period of 30 days from the date of this
warrant, including:

i.  Any unique identifiers associated with the cellular device,
including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.  Source and destination telephone numbers;

iii.  Date, time, and duration of communication; and

iv.  All data about the cell towers (i.e. antenna towers covering
specific geographic areas) and sectors (i.e. faces of the towers) to
which the **Target Cell Phone** will connect at the beginning and
end of each communication

c.  Information about the location of the **Target Cell Phone** for a period
of 30 days during all times of day and night.  "Information about the
location of the Subject Phone" includes all available E-911 Phase II

2

data, GPS data, latitude-longitude data, and other precise location information

   i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

   ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

3

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Section 841(1)(1) involving JEFFREY R. JONES.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by U.S. Cellular, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of U.S. Cellular. The attached records consist of _____.

I further state that:

a. All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of U.S. Cellular and they were made by U.S. Cellular as a regular practice; and

b. Such records were generated by U.S. Cellular's electronic process or system that produces an accurate result, to wit:

1

1.      The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of U.S. Cellular in a manner to ensure that they are true duplicates of the original records; and

2.      The process or system is regularly verified by U.S. Cellular and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
Date                                            Signature

2